**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| TAD STERN et al., | : | CIVIL ACTION |
| Plaintiffs, | : | |
| | : | No. 15-0960 |
| v. | : | |
| | : | |
| AAA MID-ATLANTIC INSURANCE | : | |
| COMPANY et al., | : | |
| Defendants. | : | |

MCHUGH, J.                                                              NOVEMBER 25, 2015

<u>**MEMORANDUM OPINION**</u>

Plaintiffs Tad and Elizabeth Stern bring suit against Defendant AAA Mid-Atlantic Insurance Company relating to a motor vehicle accident that took place in Philadelphia on September 20, 2011.[1]  Plaintiffs claim they are entitled to underinsured motorist ("UIM") coverage under the terms of their "New Jersey Personal Automobile Policy" (hereinafter, "the Policy"), and that Defendant's refusal to pay for their economic and non-economic losses constitutes breach of contract.  Defendant counters that it is not in breach of the contract because Plaintiffs' claims for non-economic damages are subject to the limitation on lawsuit provision under N.J.S.A. § 39:6A-8, also known as the "verbal threshold" under New Jersey motor vehicle law.[2]

---

[1] There are currently several motions pending that address overlapping substantive issues.  This Memorandum Opinion concentrates on the most significant legal issue in the case: whether the New Jersey verbal threshold limits Plaintiffs' recovery of damages.  The accompanying Order clarifies the effect of this disposition on related motions.

[2] "The term 'verbal threshold' refers to the limitation on tort recovery whereby an injured party may recover non-economic losses only if the bodily injury suffered is of a type or degree that falls within . . . [N.J.S.A. § 39:6A–8(a)]. The use of the term verbal threshold is somewhat odd and confusing, but it is derived from the fact that, as the legislation developed, the verbal threshold was offered as an alternative to a monetary threshold; it was thus a threshold defined by words rather than dollar amounts."  *Dyszel v. Marks*, 6 F.3d 116, 119 n.1 (3d Cir. 1993) (internal quotations and citation omitted).

Under the plain terms of the Policy and the controlling statute, I find that the verbal threshold does not apply to a UIM claim arising out of a Pennsylvania accident involving a Pennsylvania tortfeasor.  Because Plaintiffs' recovery is properly calculated based on the amount they are "legally entitled" to recover, Defendant stands in the shoes of the Pennsylvania tortfeasor for purposes of UIM liability, and language within the Policy that purports to incorporate the New Jersey verbal threshold is limited to uninsured claims.  Moreover, the plain language of N.J.S.A. § 39:6A-8 limits its application to New Jersey motor vehicle accidents, and any ambiguities or contradictions within the Policy must be construed in favor of the insured.

## I.  The Plain Language of the Scope of Coverage Under the Policy

Although Defendant concedes liability, it argues that New Jersey law should control the measure of damages.  The parties have engaged in an extensive choice of law analysis, but this needlessly complicates the issue.  In the final analysis, this matter is properly resolved by basic contract interpretation, which requires the same result regardless of whether New Jersey or Pennsylvania law is applied.[3]

The Policy reads, "We will pay compensatory damages which an 'insured' is *legally entitled to recover from the owner or operator* of an 'uninsured motor-vehicle' or 'underinsured motor vehicle.' "  The Policy at 46 (emphasis added).  I interpret these terms to unambiguously provide UIM coverage flowing directly from the obligations of the tortfeasor.[4]

---

[3] Courts applying both Pennsylvania and New Jersey law have declined to engage in a choice of law analysis under these circumstances, concluding contract interpretation provides a more appropriate form of analysis.  *See State Farm Mut. Auto. Ins. Co. v. Krewson*, 764 F. Supp. 1012, 1014 (E.D. Pa. 1991) *aff'd*, 953 F.2d 1381 (3d Cir. 1992) ("This 'choice of law' analysis, however is inappropriate.  This action presents a simple question of contract interpretation under Pennsylvania law. . . . Pennsylvania law requires the court to give full effect to the provisions of the insurance contract.  The insurance contract limits indemnification to the amount that the insured would have been able to recover from the tortfeasor."); *Hertz Claim Mgmt. v. Marchetta*, 656 A.2d 1298, 1300 (N.J. Super. Ct. App. Div. 1995) (discussed *infra*).

[4] Diversity jurisdiction has been heavily contested in this case.  Plaintiff argues that the insurance contract is a Pennsylvania based policy, consistently arguing that Defendant cannot establish itself as a recognized New Jersey

Turning first to New Jersey law, when presented with a similar factual scenario, the Appellate Division of the New Jersey Superior Court explained that a choice of law analysis was not appropriate because the case presented a "simple question of insurance contract interpretation under New Jersey law." *Hertz Claim Mgmt.*, 656 A.2d at 1300.  The underlying tort in *Hertz* dealt with the tragic death of a 17-year-old New Jersey resident who was killed instantly in a one-car automobile accident while visiting friends in Virginia.  *Id.* at 1298–99.  The driver of the vehicle, a Virginia resident, was convicted of driving under the influence.  *Id.* at 1299.  The decedent's family settled their action with the tortfeasor for the full amount of his insurance policy, and sought UIM coverage from their insurance company, Hertz.  *Id.*  Hertz argued that New Jersey's wrongful death statute, which limited recovery to economic loss, was the proper measure of damages.  *Id.*  The decedent's family claimed that Virginia's wrongful death statute controlled, allowing additional "compensation for sorrow and mental anguish."  *Id.* at 1299.

In concluding that a choice of law analysis was inappropriate because the case presented a simple issue of contract interpretation, the *Hertz* Court explained:

> New Jersey law requires insurers to offer insureds the option of underinsured motorist coverage.  *See N.J.S.A.* 17:28-1.1(b).  The purpose of the coverage is to make available insurance protection for accident victims where the tortfeasor did not have adequate insurance coverage.  A claim presented under a UIM endorsement is essentially one of contract.  Coverage is liberally construed to afford a broad range of protection to accident victims.

> The relevant underinsured coverage clause provides: We will pay *damages which an "insured" is legally entitled to recover from* the owner or *operator of an* "uninsured motor vehicle" or *"underinsured motor vehicle"*. . .

corporation because it is a "Philadelphia-based corporation, as registered in the Department of State."  *See* Plaintiffs' Opposition Memorandum at 8; Plaintiffs' Compl. at ¶ 2.  The Court has effectively adopted Plaintiffs' position in this regard by accepting diversity jurisdiction in this matter.  Defendant, however, continues to maintain it is a New Jersey insurance company, despite its failure to produce basic corroborating evidence, such as proof of New Jersey incorporation, during the pendency of two separate motions to dismiss.  Accordingly, in the interest of completeness, I will employ both Pennsylvania and New Jersey case law to interpret the Policy.

> The policy permits an insured to recover damages that he or she would be "legally entitled to recover" from a tortfeasor. Determining what an insured is "legally entitled to recover" requires determining what legal compensation may be obtained from a particular tortfeasor. . . . Because the Marchettas would have been "legally entitled to recover" sorrow and mental anguish damages from the tortfeasor, damages must be calculated according to Virginia's wrongful death statute.

*Id.* (select internal quotations and citations omitted). The *Hertz* Court's foregoing analysis is consistent with the general treatment of UIM claims under New Jersey law as deriving from the tortfeasor's liability. In fact, in 2009, the Supreme Court of New Jersey classified a UIM action as "essentially a contract-based substitute for a tort action against the tortfeasor." *Bardis v. First Trenton Ins. Co.*, 199 N.J. 265, 279 (2009).

Applying the *Hertz* Court's analysis of identical policy language to this case, just as the New Jersey wrongful death statute did not apply to a Virginia accident involving a Virginia tortfeasor, the New Jersey verbal threshold does not limit Plaintiffs' claims arising out of a Pennsylvania accident with a Pennsylvania tortfeasor. UIM damages are properly calculated based on the legal compensation that could be obtained from the particular tortfeasor involved, on these facts a Pennsylvania resident, whose insurance policy failed to fully and adequately compensate Plaintiffs for their injuries. In turn, because Pennsylvania law would have controlled the extent of damages Plaintiffs could have obtained had the underlying tortfeasor's insurance been sufficient, Pennsylvania law continues to control the measure of liability at this later stage of essentially the same case.

Indeed, under New Jersey law, an insured victim's UIM "recovery is, to a greater or lesser extent, a substitute for that which would have been derived from a third-party suit but for the inadequacy of the tortfeasor's insurance." *Stabile v. New Jersey Mfrs. Ins. Co.*, 623 A.2d 252, 256 (N.J. Super. Ct. App. Div. 1993). Specifically, in "the case of underinsurance, the carrier is obligated to pay its insured up to the coverage limit less the tortfeasor's coverage limit.

4

Everything else is the same, including the necessity of finding fault on the part of the uninsured

or underinsured driver."  *Id.*  Because of the unique nature of underinsured coverage, this case

should proceed to trial "as if it were a third-party tort action.  That is true of all uninsured and

underinsured motorist coverage cases.  The insured's legal entitlement to damages for the

uninsured or underinsured driver's negligence imports into the [uninsured or underinsured

motorist's] policy all of the normal rules governing tort liability and damages."  *Krohn v. New

Jersey Full Ins. Underwriters Ass'n*, 720 A.2d 640, 643 (N.J. Super. Ct. App. Div. 1998)

(internal citation and quotations omitted).[5]

Pennsylvania contract law and UIM insurance principles support the same interpretation

of the Policy.  The "preliminary inquiry is to determine whether the terms at issue are

ambiguous."  *In re Stendardo*, 991 F.2d 1089, 1094 (3d Cir. 1993), *as amended* (June 21, 1993).

I find that the terms of the Policy defining UIM liability are clear and unambiguous; Plaintiffs'

right to UIM recovery is derivative of the liability of the owner or operator of the underinsured

motor vehicle, here being the Pennsylvania tortfeasor.  My colleague Judge Jones recently came

to a similar conclusion when interpreting nearly identical policy language.  Relying on the Third

Circuit's unreported decision in *Willett ex rel. Willett v. Allstate Ins. Co.*, 359 F. App'x 349, 351

(3d Cir. 2009), Judge Jones explained that the "Third Circuit has found that language like that

enunciated in the UIM portion of plaintiff's policy creates a derivative form of liability, binding

---

[5] Defendant relies on *Cuttica v. Selective Insurance Co.*, 604 A.2d 989 (N.J. Super Ct. App. Div. 1992), arguing that it requires the application of the New Jersey verbal threshold in this case.  The *Cuttica* insurance policy included an "exclusion" specifying coverage was not provided for any bodily injury caused by an "accident involving an 'insured vehicle' unless the injured person has the legal right to recover damages for such pain, suffering, and inconvenience under the New Jersey No-Fault Law."  *Id.* at 991.  The policy explicitly stated "that Selective will pay non-economic damages in claims involving an uninsured motorist only where the injuries are of a type articulated under the New Jersey no-fault law."  *Id.* at 992.  The relevant portion of the *Cuttica* policy stands in stark contrast to the Policy language presented in this case, which provides UIM coverage that the insured is "legally entitled to recover" from the operator of a UIM vehicle.  In addition, although the accident in *Cuttica* took place in New York, the claimant and uninsured tortfeasor were both residents of New Jersey, presenting another significant distinction.  *Id.* at 990–91.

the UIM insurer to the liability of the tortfeasor." *Renner v. Progressive N. Ins. Co.*, No. 12-2570, 2014 WL 1091359, at *3 (E.D. Pa. Mar. 18, 2014).

In *Willet*, a Third Circuit panel interpreted almost verbatim contractual language reading, "we will pay damages . . . for bodily injury which an insured person is legally entitled to recover from the owner or operator of an underinsured auto," as follows:

> This phrase clearly and unambiguously states that coverage depends upon the decedent's legal right to damages from Piersiak [the tortfeasor].  If decedent has no right to recover damages from Piersiak, then Allstate has no responsibility under its policy.  If decedent has a right to recover only partial damages from Piersiak, then Allstate is required to pay only that amount.  In short, Allstate's contractual liability, as established by the provisions of its policy, is derivative of Piersiak's tort liability.

359 F. App'x at 350–51; *see also Allstate Prop. & Cas. Ins. Co. v. Banks*, No. 10-241, 2010 WL 3119987, at *6 (W.D. Pa. Aug. 9, 2010) (following *Willet* to interpret the phrase "legally entitled to recover" in the UIM context as derivative of the tortfeasor's liability).

The *Willet* Court's analysis of this phrase follows Pennsylvania's general treatment of UIM claims and is in line with policy considerations under the Pennsylvania Motor Vehicle Financial Responsibility Law (MVFRL), 75 Pa.C.S.A. § 1701, *et seq.  See Kmonk-Sullivan v. State Farm Mut. Auto. Ins. Co.*, 567 Pa. 514, 525 n. 5 (2001) ("UIM coverage applies only where, as here, plaintiffs are 'legally entitled' to recover against the subject tortfeasor."); *Nationwide Ins. Co. v. Resseguie*, 980 F.2d 226, 231 (3d Cir. 1992) ("The purpose of underinsured motorist coverage is to protect the insured (and his additional insureds) from the risk that a negligent driver of another vehicle will cause injury to the insured (or his additional insureds) and will have inadequate liability coverage to compensate for the injuries caused by his negligence.") (applying Pennsylvania law).  Consequently, my interpretation of the key Policy provision suggests that the New Jersey verbal threshold has no application to the facts of this case.

## II.        The Plain Language of New Jersey's Statute

Defendant argues that regardless of the foregoing, the verbal threshold "limitation on lawsuit" option is incorporated into the Policy by operation of statute, N.J.S.A. 39:6A-8. Specifically, Defendant avers that even if the Policy does not include language setting forth the terms of the verbal threshold limitation, the "LIMITATION ON LAWSUIT OPTION" listed on Plaintiffs' Schedule of Coverages form and elected on Plaintiffs' Coverage Selection Form effectively triggers the statutory protection of N.J.S.A. § 39:6A-8.  *See* Def. Mot. Par. Sum. Judg. at Exhibits A and B (Doc. No. 40).  An examination of the statute and pertinent cases construing its terms makes clear that N.J.S.A. § 39:6A-8(a) does not apply to Pennsylvania accidents involving a Pennsylvania tortfeasor.  In relevant part, the verbal threshold statute reads

> Limitation on lawsuit option.  Every owner, registrant, operator or occupant of an automobile to which section 4 of P.L.1972, c. 70 (C.39:6A-4), personal injury protection coverage, section 4 of P.L.1998, c. 21 (C.39:6A-3.1), medical expense benefits coverage, or section 45 of P.L.2003, c.89 (C.39:6A-3.3) regardless of fault, applies . . . is hereby exempted from tort liability for noneconomic loss . . . as a result of bodily injury, arising out of the ownership, operation, maintenance or use of such automobile *in this State***,** unless . . .

N.J.S.A. § 39:6A-8(a) (emphasis added).

First, the terms of the statute explicitly limit its application to injuries arising out of use of an "automobile *in this State*."  *Id.* (emphasis added); *see also Loftus-Smith v. Henry*, 669 A.2d 852, 855 (N.J. Super. Ct. App. Div. 1996) ("Because N.J.S. 39:6A–8a provides that the exemption applies only where . . . *the accident occurs in New Jersey* . . .") (emphasis added); *Roghanchi v. Rorick*, No. 91-6680, 1992 WL 279350, at *4 (E.D. Pa. Oct. 5, 1992) ("the accident which occurred in Montgomery County, Pennsylvania, happened outside the jurisdiction of [N.J. Stat. Ann. § 39:6A–8].").  Thus, because the underlying motor vehicle accident took place in Pennsylvania, the verbal threshold requirement rooted in N.J.S.A. § 39:6A-8(a) simply does not control.

Moreover, in order to claim the protections afforded by the statute, the defendant

tortfeasor has to meet certain statutory requirements.  In *Zabilowicz v. Kelsey*, the Supreme Court

of New Jersey explained the prerequisites necessary for a Defendant to seek protection under the

statute:

> Significantly, a New Jersey policyholder who chooses the lawsuit threshold may
> nonetheless sue for noneconomic damages *if* the tortfeasor is not a participant in
> this State's no-fault system and therefore is not insured for [personal injury
> protection] benefits.  *See N.J.S.A.* 39:6A–8(a). . . .

> By the clear language of the statute, a defendant who wishes to invoke the
> limitation-on-lawsuit threshold against a plaintiff must demonstrate that she is
> eligible for no-fault PIP benefits under either *N.J.S.A.* 39:6A–3.1, –3.3, or –3.4.
> Unless the defendant meets this initial burden, the remainder of the statute does
> not apply.  Therefore, a defendant without a statutory entitlement to PIP benefits
> cannot insist that an injured plaintiff prove a qualifying injury within one of the
> six categories set forth in *N.J.S.A.* 39:6A–8(a), even though the plaintiff is
> otherwise bound by the limitation-on-lawsuit threshold. . . .

> A defendant—such as the one here—who is not participating in New Jersey's no-
> fault system does not receive the benefit of invoking the *N.J.S.A.* 39:6A–8(a)
> limitation-on-lawsuit threshold as a defense.

200 N.J. 507, 510, 516, 518 (2009); *see also Loftus-Smith v. Henry*, 669 A.2d 852, 855 (N.J.

Super. Ct. App. Div. 1996) (explaining that whether plaintiff is subject to the verbal threshold

requirement of *N.J.S.A.* 39:6A–8a requires an examination of the status of the defendant,

including whether she "is entitled to receive no-fault PIP benefits under *N.J.S.A.* 39:6A–4").

Here, because Defendant's UIM liability is derivative of a Pennsylvania tortfeasor, the

statutory requirements are simply not met.  The tortfeasor's Pennsylvania residency status takes

him outside the mandates and benefits of New Jersey's required personal injury protection

("PIP") coverage.  "Simply stated, an out-of-state defendant who is not eligible to receive New

Jersey PIP benefits cannot find shelter under *N.J.S.A.* 39:6A–8(a) and may be sued for pain and

suffering damages without regard to the threshold."  *Zabilowicz*, 200 N.J. at 511; *Loftus-Smith*,

669 A.2d  at 857 ("An out-of-state driver or owner could be brought within the PIP statute's

ambit only by operation of the 'deemer'[6] statute."); *Perkins v. Shui Ping Cheung*, No. 95-1738, 1996 WL 37767, at *2 (E.D. Pa. Jan. 29, 1996) ("The New Jersey limited tort statute states that it protects those who are required to have the New Jersey mandatory personal injury protection coverage (PIP) described in N.J.S.A. 39:6A–4. . . . Defendant, a resident of Pennsylvania driving an automobile in Pennsylvania, is not a person required to have New Jersey's PIP.").  Stated differently, Defendant stands in the shoes of the Defendant driver, who, by definition, cannot seek refuge in the statute.  *Id*. ("Plaintiffs' selection of the New Jersey verbal tort threshold does not limit her claim against a Pennsylvania defendant who, by definition, is not a person protected under 39:6A–8.").  Because the accident took place in Pennsylvania, and a Pennsylvania tortfeasor is not entitled to claim protection pursuant to New Jersey's mandatory PIP coverage, this case falls outside the scope of N.J.S.A. 39:6A–8(a).

## III.     The Plain Language of the Exclusions under the UIM Endorsement to the Policy

Defendant finally argues that even if it stands in the shoes of the underinsured Pennsylvania driver, Plaintiffs unequivocally agreed to the "limitation on lawsuit" option. Specifically, Defendant relies on Plaintiffs' selections in the Coverage Selection Form, which was electronically signed by Mrs. Stern, as reflected on the Policy's Schedule of Coverages.  *See*

---

[6] N.J.S.A. 39:6A–4 is often discussed in conjunction with the "deemer statute," N.J.S.A. § 17:28-1.4.  As emphasized by Plaintiffs, the deemer statute does not apply here because it "limits the ability of *non-resident drivers* to recover from injuries sustained in car accidents *which occur in New Jersey*. . . . Once the non-resident driver crosses over state lines and enters the state, he or she is 'deemed' to be a New Jersey driver, unless his or her car insurance company does not do business inside the state of New Jersey. . . . But, here the facts are the opposite." Plaintiffs' Opposition Memorandum at 7.  Even Defendant concedes the deemer statute does not apply since the accident took place in Pennsylvania.  *See Whitaker v. DeVilla*, 147 N.J. 341, 356 (1997) ("We are convinced that the Legislature expressly intended that the deemer statute, as amended, would impose the verbal threshold on all out-of-state insureds that sustain automobile injuries *in New Jersey* and whose policies were issued by insurers authorized to transact business in New Jersey.") (emphasis added); *Harris v. Bainhauer*, 156 F. Supp. 2d 447, 448–50 (E.D. Pa. 2001) ("The deemer statute provides that any policy issued by an insurance company authorized to conduct automobile insurance business in New Jersey must contain a provision which reforms an out-of-state policy to provide the New Jersey minimum requirements as to the first-party coverages *when operated within New Jersey*."); *Koch v. Venezia Transp. Serv.*, No. 00-5686, 2001 WL 722533, at *2 (E.D. Pa. June 27, 2001) (following Judge Robreno's analysis in *Harris*).

Def. Mot. Par. Sum. Judg. at Exhibits A and B.  Upon examination of the actual language of the Policy, this argument fails as well.

The Policy, titled, "New Jersey Personal Automobile Policy," includes standard form language set forth in Part C, beginning on page 6.  That portion of the Policy is then replaced by an Endorsement, PP 04 80 07 07.  *See* the Policy at 46 ("THIS ENDORSEMENT CHANGES THE POLICY.").  The Endorsement obligates the carrier to pay compensatory damages for both "uninsured" and "underinsured" motor vehicle accidents.  *Id.*  There is a specific definition for "underinsured motor vehicle," which makes clear that the term "underinsured motor vehicle" does not include an "uninsured motor vehicle."  The Policy at 47.  That clear distinction has legal significance in the context of this case, because the Endorsement also contains a section entitled "EXCLUSIONS" which provides in part as follows:

> We do not provide coverage under this endorsement . . . [for] damages for pain, suffering and inconvenience resulting from "bodily injury" caused by an accident involving an "uninsured motor vehicle", unless the injured "insured" has a legal right to recover damages for such pain, suffering and inconvenience under the New Jersey Automobile Reparation Reform Act.  The injured "insured's" legal right to recover damages for pain, suffering and inconvenience under the New Jersey Automobile Reparation Reform Act will be determined by the liability tort limitation, if any, applicable to that "insured."

Stated simply, the controlling Endorsement explicitly invokes the tort limitation for uninsured claims, but not for underinsured claims, and the Endorsement takes pains to distinguish between them as a matter of definition.  Defendant's argument that Plaintiffs limited their right to collect damages for an underinsured claim is contradicted by the terms of the Policy itself.

At best, Defendant might have an argument that the "Limitation on Lawsuit Option" briefly referred to under the "Bodily Injury" portion of the Declarations Page was meant to signify an acknowledgment by Plaintiffs that their rights to recover damages for underinsured claims would be limited.  Such an argument is entitled to little weight, as the explicit language of

the Policy itself contradicts it.  To the extent that there is ambiguity, it is well-established under both New Jersey and Pennsylvania law that ambiguities must be construed in favor of the insured.  *See, e.g., Flomerfelt v. Cardiello*, 202 N.J. 432, 441 (2010); *Kvaerner Metals Div. of Kvaerner U.S., Inc. v. Commercial Union Ins. Co.*, 589 Pa. 317, 331 (2006).

**IV.    Conclusion**

Thus, under principles of basic contract interpretation, statutory interpretation, and specific New Jersey and Pennsylvania controlling case law, there is no question that the New Jersey verbal threshold does not apply to Plaintiffs' claims.  An appropriate order follows.

_____/s/ Gerald Austin McHugh
United States District Court Judge

11