IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| TAD STERN et al., | : | CIVIL ACTION |
| Plaintiffs, | : | |
| | : | No. 15-0960 |
| v. | : | |
| | : | |
| AAA MID-ATLANTIC INSURANCE COMPANY et al., | : | |
| | : | |
| Defendants. | : | |

**MEMORANDUM ORDER**

This 3rd day of December, 2015, upon consideration of Defendant AAA Mid-Atlantic Insurance Company's Motion to Determine Substantive Law Regarding Bad Faith and Plaintiffs' Opposition thereto, it is hereby **ORDERED** that Defendant's Motion is **GRANTED** for the reasons stated in the following memorandum.  But because Defendant's failure to make *any* settlement offer to compensate the insured following its concession of liability could be viewed as *per se* unreasonable under the totality of the circumstances, Defendant's Motion for Partial Summary Judgment Regarding Bad Faith is **DENIED**.

**I.   Choice of Law**

Although the underlying motor vehicle accident took place in Pennsylvania, Defendant argues that a proper choice of law analysis reveals that New Jersey law should control my analysis of Plaintiffs' bad faith claims.[1]   A federal court exercising diversity jurisdiction must apply the choice of law rules of the forum state.  *Kaneff v. Del. Title Loans, Inc.,* 587 F. 3d 616,

---

[1] I agree with Plaintiffs that "each substantive issue stands on its own, and that a single state's substantive laws do not necessarily attach to every issue in the case."  Plaintiffs' Opposition Memorandum at 5.  Because a proper conflict of laws analysis is issue-specific, I have analyzed Plaintiffs' two distinct claims separately.  *See Berg Chilling Sys., Inc. v. Hull Corp.*, 435 F.3d 455, 462 (3d Cir. 2006) ("Because choice of law analysis is issue-specific, different states' laws may apply to different issues in a single case"); Memorandum Opinion and Order dated November 25, 2015, Doc. No. 44 and No. 45 (resolving the parties' choice of law arguments regarding the New Jersey verbal threshold).

1

621 (3d Cir. 2009) (internal citation omitted); *Berg Chilling Sys., Inc.*, 435 F.3d at 462. Accordingly, Pennsylvania's conflict of laws rules apply here.

Pennsylvania uses a two-step hybrid approach to conflict of laws problems. In the first step, a court must determine whether a "real conflict" exists, such that the application of each state's respective substantive law produces a contrary result. *Hammersmith v. TIG Ins. Co.,* 480 F.3d 220, 230 (3d Cir. 2007). "Under general conflict of laws principles, where the laws of the two jurisdictions would produce the same result on the particular issue presented, there is a 'false conflict,' and the Court should avoid the choice-of-law question." *Williams v. Stone*, 109 F.3d 890, 893 (3d Cir. 1997). Having reviewed the parties' legal arguments, the Pennsylvania bad faith statute, 42 Pa.C.S. § 8371, and New Jersey case law construing bad faith liability, it is clear that a true conflict exists. I agree with Judge Wigenton that "Pennsylvania and New Jersey employ different approaches in both defining and remedying bad faith conduct." *Bridgewater Wholesalers, Inc. v. Pennsylvania Lumbermens Mut. Ins. Co*., No. 14-3684, 2015 WL 3448120, at *4 (D.N.J. May 29, 2015). This is particularly so here, in that New Jersey has a specific test to apply in evaluating first-party claims for bad faith.

Where a true conflict exists, the court must determine "which state has the greater interest in the application of its law." *Hammersmith,* 480 F.3d at 231.

> This analysis consists of combining the approaches of both [the] Restatement II (contacts establishing significant relationships) and 'interest analysis' (qualitative appraisal of the relevant States' policies with respect to the controversy). In the end, a court does not merely count the number of contacts between the forums and compare; rather the court must weigh the contacts on a qualitative scale according to their relation to the policies and interests underlying the [particular] issue.

*Mzamane v. Winfrey*, 693 F. Supp. 2d 442, 468 (E.D. Pa. 2010) (citing *Hammersmith,* 480 F.3d at 231; *Melville v. Am. Home Assurance Co.,* 584 F.2d 1306, 1311 (3d Cir.1978)) (internal quotations omitted). Here, the particular issue raised by Plaintiffs' bad faith claim is whether

2

Defendant's failure to offer even "a single penny to resolve [this] UIM case" in the more than four years that have passed since the underlying accident constitutes bad faith, especially considering that liability is not contested.  *See* Plaintiffs' Opposition to Partial Summary Judgment Regarding Bad Faith at 1–4; T. Stern. Dep. at 48 ("Q. Did you ever receive an offer of even a penny to settle this case?  A. No.").

I conclude that New Jersey has a greater interest in the application of its bad faith law. Even though I recognize Defendant's citizenship status as Pennsylvania for purposes of diversity jurisdiction, an "insurance contract is made in the state where it is delivered." *Hammersmith*, 480 F.3d at 233.  Here, Plaintiffs' are residents of New Jersey, which is where the contract was delivered.  Moreover, the underlying insurance policy is literally titled, "New Jersey Personal Automobile Policy," and the motor vehicle covered by the policy is registered in New Jersey. While the underlying tort triggering coverage took place in Pennsylvania and the tortfeasor involved was a Pennsylvania resident, the factual issue for purposes of Plaintiffs' bad faith claims concentrates on Defendant's conduct relative to its responsibilities under the New Jersey insurance policy.  Consequently, weighing the contacts involved on a qualitative scale, I agree with Defendant that New Jersey has a greater interest in regulating the conduct of an insurer based on the terms of a New Jersey insurance policy issued to New Jersey insureds.

## II.    Bad Faith

Defendant has moved for summary judgment regarding bad faith, arguing it is entitled to judgment as a matter of law because there is no genuine dispute as to any material fact.  *See* Fed. R. Civ. P. 56. Preliminarily, I agree with Defendant that Plaintiffs' failure to pursue discovery on bad faith makes success unlikely.  But Plaintiffs have submitted various pieces of record evidence that, taken together, present the broad contours of a claim.  There is correspondence

between counsel and testimony from both Plaintiffs about the delays encountered.[2] This accident occurred on September 20, 2011. Liability is clear; the issue is damages. On February 2, 2015, an arbitration panel made a gross award of $370,000, of which $170,000 represented economic damages. *See* Plaintiffs' Opposition to Partial Summary Judgment Regarding Bad Faith at Exhibit A. Defendant still declined to make any offer, causing Plaintiffs to bring this action.

Under New Jersey law, the controlling legal standard for first-party bad faith is as follows:

> If a claim is 'fairly debatable,' no liability in tort [for bad faith] will arise. . . .
>
> To show a claim for bad faith, a plaintiff must show the absence of a reasonable basis for denying benefits of the policy and the defendant's knowledge or reckless disregard of the lack of a reasonable basis for denying the claim. It is apparent, then, that the tort of bad faith is an intentional one. * * * implicit in that test is our conclusion that the knowledge of the lack of a reasonable basis may be inferred and imputed to an insurance company where there is a reckless * * * indifference to facts or to proofs submitted by the insured.

*Pickett v. Lloyd's*, 131 N.J. 457, 473 (1993) (internal citations and quotations omitted).

Plaintiffs have supported their claims for physical injuries, pain and suffering, and economic damages with admissible evidence, and that evidence was sufficiently persuasive that arbitration resulted in a meaningful award in Plaintiffs' favor, specifying the amount of economic losses. Defendant's main reason for refusing to compensate Plaintiffs related to their claims for non-economic damages. Defendant has not explained any basis for its failure to offer any amount to settle Plaintiffs' claims for *economic* damages.

---

[2] *See, e.g.,* T. Stern Dep. at 31–33 ("I know that I've done everything that the insurance company has asked of me, provided any information and cooperated all along, went to an arbitration. I thought that it should be resolved. It's been almost five years."); E. Stern Dep. at 22 ("I just feel like I've done everything that [Defendant] asked of me, giving [Defendant] all of my records, went to see all the doctors. We went to an arbitration. We got hit through no fault of our own. And there wasn't any talk of settlement or anything. And then we were cut off from any kind of rehabilitation or any further treatment.").

Defendant's failure to make any settlement offer in the face of Plaintiffs' proofs and a substantial arbitration award relating specifically to economic losses could be interpreted by a reasonable juror as reckless indifference to the facts. Moreover, with respect to the verbal threshold on which Defendant has relied to deny compensation for non-economic damages, the Policy on its face limits application of the threshold to uninsured claims, which are expressly defined as distinct from underinsured claims. *See* Companion Memorandum Opinion and Order dated November 25, 2015, Doc. No. 44 and No. 45. From a judicial perspective, I am hard-pressed to see how that language is at all debatable. In addition, the plain terms of N.J.S.A. § 39:6A-8, the verbal threshold statute, unambiguously limit its application to New Jersey motor vehicle accidents. *Id.*

At trial, Defendant will undoubtedly present testimony from its adjusters as to their analysis of both the economic and non-economic components of the claim, and Plaintiffs will be at a tactical disadvantage by having failed to depose them. The defense is correct that ordinarily a plaintiff's failure to explore the thought process of the claims adjusters would be fatal to a claim for bad faith. But given the broad confines of this case and Defendant's failure to make any offer whatsoever, there is a basis on which a jury could reasonably find bad faith. The evidence may be scant, but I cannot conclude that it is non-existent.

"[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986); *Big Apple BMW, Inc. v. BMW of N. Am., Inc.*, 974 F.2d 1358, 1362–63 (3d Cir. 1992). "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions . . . The evidence of the non-movant is to be believed, and all justifiable inferences are

to be drawn in his favor." *Anderson*, 477 U.S. at 255.  Thus, at this juncture, it is appropriate for a jury to assess the credibility of the parties and their witnesses and weigh the evidence accordingly.

      /s/ Gerald Austin McHugh
United States District Court Judge